BINGHAM SCHOOL v. P. L. GRAY et al.

(Decided May 17, 1898).

*Injunction—Family or Sur-Names—Trade Name—Good Will—Incorporation—School.*

1. As a rule, a trade mark cannot be taken in a sur-name and any one having the same sur-name as that under which a business has been long and successfully conducted by another, so as to acquire a reputation therefor, can conduct a like business under the same name, provided there be no intent to injure or fraudulently attract the benefit of the good name and reputation previously acquired by the other.

Bingham School *v.* Gray.

2. It is beyond the scope of the powers of the General Assembly to establish a monopoly in a family name or to confer a patent right in its use.

3. William Bingham established a school in 1793, which was conducted by him during his life and after his death by successive generations of his lineal descendants, of the same name, under the name of "Bingham School." In the year 1861 while the school was being conducted by two brothers, William and Robert, the latter withdrew for the purpose of entering the Confederate State's Volunteer Service. In 1864 the General Assembly incorporated "William Bingham and his associates" under the name of "Bingham School," and, under an agreement with certain associates, William reserved to himself the name and reputation of the school. Robert B. resumed connection with the school in 1865 and in 1879 got control of the school and conducted it under the same name until 1891 when he removed it to Asheville from the *situs* owned by the widow and children of William where it had been conducted since 1865. William died in 1873, leaving his property to his widow for life with remainder to his children. In 1895, within thirty years from the ratification of the incorporating Act of 1864, the General Assembly incorporated "Robert Bingham and his associates" under the name of "Bingham School" which is the plaintiff herein. The defendant Gray, in right of his wife (a daughter of William Bingham) and of the widow and a son of William, is conducting a school at the old site under the name of "The William Bingham School," and the plaintiff seeks to enjoin defendants from using that name with the legend "Established in 1793," and from carrying into effect their contemplated purpose of using the name "The Bingham School-" *Held,*

(1) That the defendants have the right not only to use the name "The William Bingham School" but also, if they desire, the name "Bingham School" together with the statement "Established in 1793."

(2) That the incorporating Act of 1895 did not have the effect of creating a trade mark of the Bingham name and of confining the exclusive right to use it in connection with school purposes upon that corporation.

(3) Nor is it a prohibition upon all others named Bingham, whether of that family or of any other of the same name, against using the name in connection with any school they might establish.

CIVIL ACTION pending in BUNCOMBE Superior Court and heard on complaint, answer and affidavits before

*Hoke*, *J.*, at CHAMBERS in Asheville during March Term, 1898, of Buncombe Superior Court, on a motion to dissolve the restraining order theretofore issued. His Honor, after hearing the affidavits and argument of counsel, rendered the following judgment:

"On the affidavits and exhibits in the cause the Court doth find and declare:

That Rev. Wm. Bingham established a classical school at Wilmington, N. C., in 1793, and thereafter removed said school to Chatham county, and thence to Orange county, N. C., where said school was conducted by him till 1825, when he died. That his oldest son, W. J. Bingham, took charge of said school and continued same in Orange county, N. C., till 1857, when he associated with him his two sons, William Bingham and Robert Bingham, one of the plaintiffs and now sole owner and stockholder in plaintiff corporation.

The school was conducted by them till 1861, when Robt. Bingham entered the Confederate Army, where he remained till the surrender, retaining, however, his portion and interest as partner and co-owner of said School.

In 1864, W. J. Bingham, having become too feeble to take active part in management of said School, gave up teaching and died in 1866, leaving last will and testament set out in exhibit "A," willing School property to his sons and giving some directions as to said School being conducted by his two sons or one of them.

In latter part of 1864, William Bingham, having associated with himself W. B. Lynch and Stewart White, had company incorporated by Act of Legislature of 1864, on terms, plan and scheme set out in article of agreement, exhibit "B." Articles were executed on 8th of December and Act passed 9th of December, 1864,

which said Act is also exhibit in cause, marked "C."

In these Articles, exhibit "B," is contained the following stipulation: "That nothing herein contained shall prejudice the original and ultimate right of property in the name of said School pertaining to Wm. Bingham as representative of the name and reputation of the School."

In fall of 1865, Stewart White retired from School, sold his interest therein to William Bingham, and Robt. Bingham having returned from the army resumed his place as teacher and member of said corporation organized as above set forth, the School being termed from and after January, 1865, the Bingham School.

That said School was conducted by William and Robert Bingham and W. B. Lynch, at Mebane, N. C., till 1872, when William Bingham's health having failed he ceased to do any actual work in School, and withdrew from any actual participation in its affairs or management till 1873, when he died.

The School was then conducted by Robert Bingham and W. B. Lynch till 1879, when said W. B. Lynch sold his interest then to Robert Bingham and retired from said School, at said time leaving Robert Bingham in sole control and management of said School. That Robert Bingham conducted said School at Mebane, till 1891, with Mrs. William Bingham, widow of William Bingham, conducting the boarding department of said School, at which time said Robert Bingham removed his School to Asheville, N. C., and has conducted it there to present time.

The charter having expired by limitation in December, 1894, or February, 1895, Robert Bingham again had his School incorporated by Act of Legislature, 1895, exhibit "D."

That on death of William Bingham he left him living his widow, Mrs. William Bingham, and sons and a daughter, Mrs. Bingham Gray, wife of defendant, Preston L. Gray, and said William Bingham in his last will and testament left all his property to his widow for life or widowhood and after her death to his children. In will, exhibit "E," and in said will Robert Bingham was appointed executor.

That said Robert Binghan qualified as executor of said will, administered on the tangible property of William Bingham, deceased, and made a report and settlement of such administration within a few years after his brother's death, but has made no report and has not accounted to said estate or to legatees thereof for any interest they may have in the said good will or name or reputation of the Bingham School.

That in 1864 and before that time the Bingham School had become extensively known, and was justly considered a permanent, desirable School of first grade, and the name and reputation and fame was a valuable property possession.

That plaintiffs are conducting a School at Asheville, N. C., under their charter of 1895, and under corporate name therein given have maintained and increased the reputation of the School.

That defendants are conducting a School of excellent grade at Mebane, N. C., on site' of old School, and the owners and managers of same are the widow and children of W. J. Bingham, deceased, Preston L. Gray, principal, who married daughter of said William Bingham deceased, and are conducting the same under name and style of William Bingham School, of Orange, N. C., and put in catalogues and otherwise that this School was organized in 1793, and is one of the rightful successors of

the name and reputation of the school founded and conducted by Bingham since 1793, and hence maintain the right to style themselves the Bingham School should they so desire.

The present catalogue of each School will accompany this case as exhibit in same.

Upon the foregoing facts and on the affidavits and exhibits in the cause the Court is of the opinion that neither the plaintiff corporation nor Robert Bingham is the sole and exclusive owner of the name and reputation of the School, organized by the Binghams in 1793, and conducted continually by that family till 1864.    That defendants who act by and with the authority of the widow and children of William Bingham, deceased, have a rightful share in the name and reputation of said School and are of right entitled to use the name of William Bingham School of Orange county, N. C., and to state and claim that their School is one of the successors of the School established in 1793, and it is thereupon adjudged and decreed that the restraining order heretofore issued be and the same is hereby dissolved, and that the plaintiffs and sureties pay costs thereof, to be taxed by clerk."

*Messrs. Merrimon & Merrimon*; *John W. Graham* and *R. W. Bingham* for plaintiff (appellant).

*Messrs. R. T. Gray, R. O. Burton* and *F. S. Blair* for defendants.

CLARK, J.:    The Court below found as facts:    That Rev. Wm. Bingham established a classical school at Wilmington, N. C., in 1793, which he subsequently removed to Chatham county and thence to Orange county, N. C., where said school was conducted by him up to his death in 1825; it was then continued by his oldest

son Wm.. J. Bingham till 1857, when he associated with him his two sons, William Bingham and Robert Bingham, till 1861 when the latter entered the Confederate army and shared its fortunes until the end came in 1865. In 1864 William J. Bingham, on account of ill health, gave up teaching and his son William Bingham procured the school to be incorporated by the Legislature as the "Bingham School." "William Bingham and those who may be associated with him," being named as the incorporators in said charter; in the articles of agreement made between William Bingham and William B. Lynch and Stuart White, whom he "associated with him," under the above charter provision, it is stipulated "nothing herein contained shall prejudice the original and ultimate right of property in the name of said school pertaining to William Bingham as the representative of the name and reputation of the school." In 1865 Stuart White retired from the school, selling out his interest to William Bingham, and Robert Bingham assumed his place as teacher and member of the corporation; the school was removed to Mebane, N. C., and conducted by the two Binghams and Lynch till 1872, when William Bingham withdrew from actual participation in the school work and died in 1873; in 1879, Lynch sold out to Robert Bingham who conducted the school under his sole management, the widow of William Bingham conducting the boarding department, till 1891, when Robert Bingham removed the school to Asheville, N. C., and has conducted it there till the present time; the charter expiring, Robert Bingham had the school again incorporated by Act of the Legislature in 1895; on the death of William J. Bingham in 1866 he left his school property to his two sons, and on the

122—45

death of William Bingham, in 1873, he left all his property to his widow for life and after her death to his children; Robert Bingham qualified as executor under the will of his brother, William Bingham, and settled up the estate, but did not account to the estate or the legatees thereof for any interest they might have in the good will or name of the "Bingham School"; the defendants are the widow and children of William Bingham and are conducting a School at Mebane, N. C." on the site of the old school and under the style of the "William Bingham School," and in their catalogues and advertisements claim that the school was organized in 1793, and they assert that the school is one of the rightful successors of the name and reputation of the school founded and conducted by the Binghams since 1793, and maintain that they have the right to style themselves the "Bingham School," should they so desire.

Upon the above facts the court below properly adjudged that "neither the plaintiff corporation nor Robert Bingham is the sole and exclusive owner of the name and reputation of the School organized by William Bingham in 1793 and conducted by that family continually till 1864, that defendants, acting under the authority of the widow and children of William Bingham, deceased, have a rightful share in the name and reputation of said School and are of right entitled to use the name of William Bingham School of Orange county, N. C., and to claim that their school is one of the successors of the school established in 1793," and dissolved the restraining order which had been previously granted at the instance of the plaintiff.

As the defendants are the widow and children of William Bingham (or those acting under their authority) who are conducting the school on the old site at Mebane,

we see no ground upon which the plaintiff can ask that they be prohibited from styling the school, if they wish, the "Bingham School," and most certainly no reason why the plaintiff should enjoin their using the present style the "William Bingham School" to which the plaintiff can lay no claim and which is sufficiently distinctive from the plaintiff's title.

That the plaintiff is incorporated as the "Bingham School" does not give it the exclusive right to that name; another corporation might be created by and operated under the same title, when not in the same locality, in the absence of proof of an intent to injure the first named corporation or to avail itself fraudulently of the other's good name and reputation. Where there was a Fulton National Bank in New York and a Fulton National Bank was subsequently opened in Brooklyn, the former could not enjoin the latter. *Farmer's L. & T. Co.* v. *Farmer's L. & T. Co.*, 1 N. Y., Supp. 47.

As a rule, a trade mark cannot be taken in a surname, and any one named Bingham could start a school called the "Bingham School," in the absence of proof of intent to injure, or fraudulently attract the benefit of the good name and reputation acquired by a previously existing "Bingham School" (*Brown Chemical Co.* v. *Meyer*, 139 U. S., 540; 2 Beach Inj., Section 762) and certainly there could be no confusion between a Bingham School at Asheville and a school even of the identically same name at Mebane, N. C. *Investor Pub. Co.* v. *Robinson*, 82 Fed. Rep., 56.

But in truth the doctrine of "trade mark" can have no application except reasoning by analogy which is often deceptive. This is a case of the right to "good will." The corporation running the school recognized in 1864 that the "good will" was the individual proper-

ty of one incorporator, William Bingham. Being a cor-
poration and not a partnership, that good will did not
pass to the other corporators. The doctrine as to the
passing of good will to the remaining partners, on the
retirement of one, has no application, as in *Menendez*
v. *Holt*, 128 U. S., 514. On the expiration of the cor-
poration in 1894, this good will was still the property of
the widow of William Bingham, to whom all his proper-
ty went by his will. She could use it by putting it in a
new corporation, or by joining in a school without in-
corporating it. In like manner, in the well known
instance of the Blackwell M't'g. Co., the right to the
"brand" was the individual property of one of the
stockholders. All the realty and buildings used in con-
nection with the Bingham School from its removal to
Mebane in 1864, down to the removal of Robert Bing-
ham to Asheville in 1891, were the property of William
Bingham till his death and then to his widow and chil-
dren except about eight acres sold to Robert Bingham
by them in 1875, with a covenant in the deed that the
land so conveyed should be used solely to erect thereon
a residence for himself and academic buildings, (the
latter to be used by the Bingham School at a reasonable
rent) and for no other purposes, with provision that the
grantors should have the refusal should Robert Bingham
at any time desire to sell said realty.

The right of Robert Bingham to operate a "Bingham
School" is because of his bearing the name, and also be-
cause of an Act incorporating the school by that name.
He has no title to the good will of the former Bingham
School and his claim that the school at Asheville is the
sole successor of the Bingham School established in 1793
can not be sustained. His claim that his school is one
of the successors thereof will not be restrained because

the defendants have not asked it, and perhaps, even if asked, the courts would not enjoin it as the damage is intangible, since it could not be shown that its use at that distant locality has perceptibly damaged the "good will" of the school at Mebane, which passed to the defendants. The incorporation of the "Bingham School" at Asheville, N. C., has only the usual effect of a charter, *i. e.* to confer the corporate rights of perpetual succession, suing and being sued, exemption from personal liability of stockholders and the like. It did not have the effect of creating a trade mark of the Bingham name and of conferring the exclusive right to use it, in connection with school purposes, upon that corporation nor is it a prohibition upon all others named Bingham, whether of that family or of any other of the same name, using it in connection with any school they might establish. Such an idea was foreign to the legislative mind, and it is beyond the scope of the powers of the State Legislature to establish a monopoly in a family name or to confer a patent right in its use.

As to the right to claim to be a successor of the school "established in 1793" it belongs to the defendants, to say the least, fully as much as to the plaintiff. Up to 1864 there had been unbroken succession in the school taught by the Binghams and, in that year, the sole right as successor appears by the agreement among those then teaching to have devolved upon William Bingham, the husband of one of the defendants and father of the other defendants, Robert Bingham having left the school in 1861. This right exclusively in William Bingham in 1864 was recognized by Robert Bingham entering the corporation subject to that agreement; it was not sold by him as executor of William Bingham and is not shown to have passed by sale or otherwise in

William Bingham's life to Robert Bingham.   The incorporation of 1895, as we have seen, conferred and could confer, no such right of transfer.   That Act was purely for incorporation—nothing more.   If, since 1865, Robert Bingham has continuously taught in the school and since 1872 as its head, he has the benefit of that, but that does not make him the sole heir to the name and reputation acquired from 1793 to 1872.   There was. a break in his own connection with the school from 1861 to 1865 and there was a decided break in the continuity of the school by the removal of it to a distant point in 1891 and he fails to show any acquisition by him of the exclusive right held by William Bingham from 1864 to his death.   This presumedly went to the widow of William Bingham, under his will.   The break in the operation of the Bingham School at Mebane, after 1891, was not a forfeiture of the right to revive the school there as a successor of the school founded by the same family in 1793—still less did it transfer the exclusive right to use the name of "Bingham School" upon Robert Bingham (or the corporation) operating a school at Asheville.

There can be a generous rivalry between the two schools, respectively at Asheville and at Mebane, to show, by superior teaching, which is a successor in the truest sense to the celebrated "Bingham" school which has been so long an honor and a service to our State.   There is room for good service by both.   Neither can restrain the other in the use of the name (2 High Inj. Section 1070) and each may also claim a nominal successorship to the school originally founded in 1793.

No error.