NATIONAL GROCERY COMPANY, a corporation, complainant,

*v.*

NATIONAL STORES CORPORATION, a corporation, defendant.

[Decided February 29th, 1924.]

1. Competition in business which is unethical, but not illegal, is not unfair.

2. Unfair competition will be restrained even though the distinctive word used is purely generic or descriptive, or a common adjective of the language.

3. Where it is sought to enjoin the use of a geographical name on the ground of unfair competition, it must appear that such use is with fraudulent intent to deceive the public.

4. There must be actual competition in business before there can be unfair competition.

5. Where a business is conducted exclusively in the southern part of the state, it cannot be said to compete with a business conducted exclusively in the northern part of the state, the two businesses being separated by a distance of twenty-five or thirty miles.

---

On bill, &c.

*Messrs. Edwards & Smith,* for the complainant.

*Messrs. Wall, Haight, Carey & Hartpence,* for the defendant.

BENTLEY, V. C.

This is a bill to enjoin the defendant from the use of the word "National" in its corporate name or in connection with its grocery stores. Some confusion appears to have existed in the mind of the complainant as to the character of the suit under its bill. Its counsel has repeatedly said, both in argument and in his brief, that it is not a suit to restrain unfair competition. However, it seems to me that it must of necessity be such a suit, because it is beyond argument that it must fall either into the category of such a suit or else of one to protect a trade-mark. Manifestly, it cannot be classed among the latter.

The complainant was incorporated in 1908, for the purpose of conducting what has been described as a "chain of grocery stores" in this state, all being located in the northern counties, depending for its trade upon the excellence of the commodities dealt in, the cleanliness of its stores, the courteous and attractive treatment of its customers, wide advertising under the name "National," and the comparatively low prices of its goods, made possible by the purchase and sale of very large quantities of goods for which credit is not extended and which the customers are obliged to carry to their homes or other destination, no deliveries being made by the stores. In carrying on its trade the complainant has built up a very valuable business, and has expanded the number of its stores from a modest beginning to more than four hundred. In all of its existence it has, in all its forms of advertising, stressed and made most prominent the word "National," so that its stores are widely spoken of, colloquially, as "National Stores."

In 1922 a corporation was formed, under the laws of this state, the name of which was the New Economy Stores Corporation, which operated, in the central and southern por-

tion of the state, about forty stores similar in general character to those of the complainant. Following that, in the early part of 1923, another corporation was organized under the laws of the State of Maryland, known as National Stores Corporation (the defendant), and was designed for the purpose of acquiring and operating the stores theretofore known as the New Economy Stores. This last-mentioned company, complying with the statute, secured a certificate from the secretary of state of New Jersey, authorizing it to do business. The object of the defendant is to carry on a business similar to that of the complainant heretofore described.

In its advertising in the newspapers the defendant, also like the complainant, gives the utmost prominence to the word "National" appearing in its name, so that anyone casually reading such advertisements will unquestionably have his attention arrested by that single word. In one of the advertisements the word "National" appears in letters three-quarters of an inch in height, while the letters composing the term "Stores Corporation" are less than one-quarter of an inch in height. In labeling its name upon the windows of its individual stores the defendant also gives like prominence to the word "National," so that any ordinary observer would probably fail to pay any attention to the rest of its corporate name. It is true that a number of differences exist in the appearance of the stores of the defendant as distinguished from those of the complainant, such as the fact that the former are painted an orange color while the latter are a dark green; the defendant uses white enameled letters on the outside of its windows to proclaim its name, while the complainant has its name in gilt letters painted upon the inside of the glass; all three words of complainant's name appear in letters of equal size, while the defendant's name appears in letters of two different sizes. those composing the word "National" being about fourteen inches in height, while the remainder, forming the words "Stores Corporation," are so small that they are almost negligible." Nevertheless, there is such a striking similarity that I feel convinced that the defendant has purposely attempted to secure a benefit from

CASES IN CHANCERY, 1924.          591

*95 N. J. Eq.*    National Grocery Co. *v.* National Stores Co.

the wide and favorable impression already made upon the purchasing public by the complainant. The testimony of the witness Nussbaum, explaining the adoption of the present name in place of the former name of "New Economy" Stores Corporation, is exceedingly weak. He says that there was an apprehension upon the part of the officers that the word "Economy" might import to the housewife's mind an idea that he expressed as "cheapness," meaning an inferior line of goods for the purpose of charging a smaller price. If that were so, and I do not think it is, that was no reason for taking and advertising the name of another company engaged in a like business, except upon the hypothesis just referred to. In addition, the incorporation of the defendant in this state, where most of its business is transacted in the summer of 1922, and then its subsequent reincorporation in the State of Maryland about a half year later, where it had no business, is very significant.

My trouble with the complainant's case is that, no matter how sharp this practice may be, it does not give rise to a situation with which this court can deal. Vice-Chancellor Garrison, in the case of *Perlberg* v. *Smith, 70 N. J. Eq. 638,* expressed this thought when he said: "Care must be taken in these cases not to extend the meaning of the word 'unfair' to cover that which may be unethical but is not illegal. It may be unethical for one trader to take advantage of the advertising of his neighbor, but his so doing would in many instances be entirely legal."

Had the grievance of the complainant been the pirating of a trade-mark, a very different situation would be disclosed. The testimony was that neither of these companies is engaged in manufacturing of any sort, except that the complainant bakes bread, and in the few instances where they are engaged in packing goods purchased in bulk under a distinctive trade name, there is no infringement. The grievance is the single one already mentioned, namely, the use of the word which the complainant says it has preempted in the chain-store business in the State of New Jersey as against the entire world. That, in my opinion, excludes this case

from consideration as a suit to enjoin the infringing of a trade-mark, and stamps it as one against unfair competition, there being, so far as I know, no other class of cases under which it can even be argued that it falls. The distinction of the cases is, that the infringement of a trade-mark is a violation of an exclusive right of the complainant to the use of a word, mark or symbol, while unfair competition is much broader and will be restrained, even though the word may be purely generic or descriptive and, as in this case, a common adjective of the language. *Dennison Manufacturing Co.* v. *Thomas Manufacturing Co., 94 Fed. Rep. 651; Daviess Distilling Co.* v. *Martinioni, 117 Fed. Rep. 186.*

In the case of the infringement of a trade-mark fraud will be presumed, but that element is the very gravamen of a suit for unfair competition and must be pleaded and proved. *Elgin National Watch Co.* v. *Illinois Watch Case Co., 179 U. S. 665.*

The general rule is, that where it is sought to enjoin the use of a geographical name on the ground of unfair competition, it must appear that such use is with the fraudulent intent to deceive the public. *American Wine Co.* v. *Kohlman, 158 Fed. Rep. 830; Elgin Butter Co.* v. *Elgin Creamery Co., 155 Ill. 127; VanHorn* v. *Coogan, 52 N. J. Eq. 380.*

In this last case Vice-Chancellor Van Fleet said, in an opinion adopted on appeal by the court of errors and appeals (at *p. 383*) : "But it is contended that a geographical name, like Portland, cannot be a trade-mark, nor be so used as to give the dealer, who first adopts it, an exclusive property in it. This, I think, may be conceded without impairing, in the slightest degree, the complainant's right to the protection it asks. For, as was said, in substance, by Lord Langdale in the case just cited, the question, in cases like this, is not whether the complainant has a property in the name by which his goods are distinguished in the market, but, on the contrary, the pertinent inquiry is, has the defendant a right to use the name by which the complainant's goods are known for the purpose of deception, *and in order to attract to him*

*self that custom which, without the improper use of such name, would have flowed to the complainant?* And the answer to the inquiry is, that the defendant has no such right." The italics are mine. In all such cases, and in all of those cited by the complainant, there has been present the fraudulent element indicated by the language of Vice-Chancellor Van Fleet which I have emphasized. In the case *sub judice* this necessary element to a case of unfair competition is not to be found. Obviously, by force of the definition of the kind of business in which the parties are engaged, each store must draw its trade from a very small surrounding territory, because customers obliged to pay cash and carry away their purchases will not patronize a store unless within their immediate neighborhood. The proofs show conclusively that not only has the defendant scrupulously remained out of the territory exploited by the complainant, but that the complainant's activities have been confined to the northern counties of the state, the defendant's to the southern or central part of the state, and that the most southerly of the former is separated by perhaps twenty-five or thirty miles from the most northerly of the latter. This being so, it can scarcely be said that any unfair competition exists. As tersely expressel in *37 Cyc. 760:* "Of course, there must be actual competition before there can be any unfair competition."

For example, it was held that druggists and physicians conducted businesses, professions or callings not in competition with each other, so that an injunction would not lie for unfair competition. *Clark* v. *Freeman, 11 Beav. 112.* To the same effect is *Borwick* v. *Evening Post, 37 Ch. Div. 449,* where it was held that an evening paper did not compete with a morning publication, each using in its title the word "Post."

The complainant goes further in its demands than I think is justified, when it argues that because under its charter it is authorized to do business in any part of the state under its corporate name it has thereby preempted all the markets that can be found within New Jersey against any company formed

with one adjective in its name to be also found in that of the complainant. Such a rule would be subversive of the underlying principle governing monopolies, and would, of course, be highly detrimental to the public interest by reason of the stagnation of trade while the complainant was making up his mind and securing the capital necessary to expand into territory it might properly occupy and which it hopes and expects some day to invade. While I know of no decision of our own courts in a case on all-fours with the present case, there are, however, many opinions in other jurisdictions that make it clear that the right of a given name previously adopted in a business located in one locality does not invest the proprietor of that business with the right to enjoin the use of the same or a similar name by a junior enterprise in another locality where one does not encroach upon the other. Such were the cases of the *Eastern Outfitting Co.* v. *Manheim, 59 Wash. 428; Investor Publishing Co.* v. *Dobbinson, 82 Fed. Rep. 56; Olin* v. *Bate, 98 Ill. 53; Miskell* v. *Prokop, 58 Neb. 628; Hygeia Distilled Water Co.* v. *Consolidated Ice Co., 144 Fed. Rep. 139; Nebraska Loan and Transfer Co.* v. *Nine, 27 Neb. 507; Levy* v. *Waitt, 61 Fed. Rep. 1008; Hazelton Boiler Co.* v. *Hazelton Tripod Boiler Co., 142 Ill. 494; Bingham School* v. *Gray, 122 N. C. 699.* But, the complainant says, this rule is not applicable to the instant case, because, in the very nature of things, the prospect of a so-called chain-store business is the constant expanding, reaching out and establishing of new stores in neighborhoods not already tapped. Surely, in the great majority of business enterprises, and especially those like the complainants's, involving a business capable of expansion and the investment of large capital, there is implied the hope, intention and design of constantly invading new territory, for the purpose of securing an increasing volume of business. For reasons already touched upon, it would be absurd to say that any such intention should permit the preempting of the use of the name at a place and time where such a supposed business enterprise had no customers or business and, therefore, nothing to lose. It is entirely too

remote and fanciful for the complainant to object to another using a name in a certain locality, not because he has already established his trade there, but because he may do so in the future. For it is equally probable he may not. It is significant that in all the cases cited by the complainant in its brief there was an actual competition between the parties, in accordance with that portion of Vice-Chancellor Van Fleet's opinion in *Van Horn* v. *Coogan,* which I have already quoted and emphasized. In none of these cases is there presented the distinguishing features of this case, to wit, that the parties were so separated from each other, territorially, that by reason of that fact and the character of their activities it was impossible for one to injure the other. In the case of *Hilton* v. *Hilton, 89 N. J. Eq. 149,* upon which complainant relies, will be found a typical case of the distinction I have pointed out between such cases and the one at bar. In this case Vice-Chancellor Lane distinctly points out (at *p. 152*): "These stores, or some of them, are in comparatively close proximity to some of those of the 'Hilton Co.' Joseph now contemplates opening store in Brooklyn, in comparatively close proximity to that of the 'Hilton Co.,' and another in New York, immediately opposite the Nassau street store of the 'Hilton Co.' "

In all the cases which the vice-chancellor used as precedents in the *Hilton Case,* the outstanding fact, as expressed in the respective opinions, was the stealing by the defendant of the complainant's customers, such as the *National Biscuit Co.* v. *Pacific Coast Biscuit Co., 83 N. J. Eq. 369,* where the chancellor spoke of the underlying principle of "filching the business of a rival." To like effect are the other cases of *International Silver Co.* v. *Rogers, 71 N. J. Eq. 560; Cape May Yacht Club* v. *Cape May Yacht and Country Club, 81 N. J. Eq. 454; R. C. & H. T. Co.* v. *Rubber Bound Brush Co., 81 N. J. Eq. 419.*

Much stress has been laid upon subdivision 1, section 8 of "An act concerning corporations (Revision of 1896)," where it is declared: "No name shall be assumed already in use by by another existing corporation of this state, or so nearly

similar thereto as to lead to uncertainty or confusion." I do not see how the complainant can complain of the adoption of its name by the defendant, under this statute, except as its right may have been infringed, on the theory of unfair competition or the trade-mark theory. I agree with the defendant's counsel that this section of the act, so far as individuals may be concerned, is but a crystallization of familiar rules as to unfair competition. In this connection, the complainant gives much weight to the opinion in *Glucose Sugar Refining Co.* v. *American Glucose Sugar Refining Co., 56 Atl. Rep. 861*, not officially reported. Of course, in that case the court found actual competition between the parties and fraud upon the part of the defendant, and therefore it was determined that the complainant was entitled to an injunction, both under the eighth section of the Corporation act and the theory of unfair competition. When the vice-chancellor summarized the conduct of the defendant in assuming the name of the complainant as "inequitable," he used another term for the phrase "unfair competition," which, of course, in its very essense, is inequitable when it exists. Were it present in the case at bar, the complainant might secure relief against it, irrespective of the statute, but the statute affords no additional right to it. I do not believe that it was the intention of the legislature to lay down a flat rule that was to be applied similarly to a yardstick, irrespective of the legal and equitable rights of the parties.

So far as a fraud upon the act of the legislature is concerned, I do not think the complainant can be heard to speak for the state. I am reminded of the language of the chief-justice in *Prindiville* v. *Johnson, 93 N. J. Eq. 425 (427)* : "So far as the vindication of our laws and policies is concerned, it is enough to say that the state does not need his aid for any such purpose, and that his assumed status as a representative of the state cannot be recognized."

Should the section of the state now served by the complainant be invaded by the defendant, a new situation will be presented, and one with which I am not now concerned or at liberty to express an opinion.

I will advise that the bill be dismissed.