BLUE GOOSE AUTO SERVICE, INCORPORATED, and HENRY
LEVIN, complainants,

*v.*

BLUE GOOSE SUPER SERVICE STATION, INCORPORATED,
defendant.

[Decided December 10th, 1930.]

*Mr. Nicholas S. Schloeder,* for the complainants.

*Mr. Louis Liebowitz,* for the defendant.

FALLON, V. C.

I am going to determine this matter now. I am convinced that the complainants are not entitled to the relief prayed by them. In the first place I consider that there could not be any relief granted to both the complainants even though relief should be granted on the proofs in this case. There is manifestly a misjoinder of complainants in this suit. The suit is filed in behalf of Blue Goose Auto Service, Incorporated, and Henry H. Levin. It appears from the proofs in this case that the complainant Levin engaged in business in the city of Newark under the trade name Blue Goose Super Service Station. It was intimated by said complainant that he filed a certificate of such trade name in the county of Essex. There is no proof before me to that effect. If he filed such certificate he ought to have been able to establish the fact by proper proof. But whether he filed the certificate or not appears to me a matter of inconsequence for the purpose of my determination of this cause. Levin, it appears, was engaged with some other business concern—a corporation, previous to the name of the Blue Goose Auto Service being used, and several years ago effected a change of the corporate name to Blue Goose Auto Service, Incorporated. The corporation was engaged in business in what was then known as the town of West Hoboken, which subsequently became the city of Union City by reason of the consolidation of the town of West Hoboken with the town of Union. The place of business fronted on the Hudson county boulevard and ran through to a street called Kerrigan avenue. The nature of the business the complainant corporation was engaged in was the servicing of automobiles; not only the furnishing of gas and accessories such as oil, tires and the like, but also giving attention to brakes on autos. In other words, it was intended within the word *servicing* to comprehend all attention required to be given to automobiles in order to make them in good condition for operating. The business of such corporation was discontinued in August, 1926. The complainant Levin first testified that it was discontinued in 1927; he stated the business was operated from 1925 to 1927. Sub-

sequently he corrected his testimony so as to make the period from 1925 to August, 1926. The place of business which had been conducted by the Blue Goose Auto Service, Incorporated, was after August, 1926, operated for laundering of cars (washing of cars I assume is meant) by other parties, but the name *Blue Goose* continued to remain on some part of the building, although not to the extent it had been displayed previously. Levin, it appears, established himself in business in the city of Newark. He says he opened such place of business in August, 1927. Whether he is mistaken in that or whether it was August, 1926, I deem it unnecessary to comment upon at this time. He says he has been engaged in business there for a period of three years under the name Blue Goose Super Service Station. Counsel for complainants has laid stress in this case upon the use of the words *Blue Goose* and the word *Super* as applied to the word *Service*. Throughout the conduct of the case he seemed to emphasize the word *Super* as having a distinctive meaning, and that the words *Blue Goose* had a distinctive meaning, valuable to the complainants. But the proofs manifest that the complainant Levin did not so regard it in so far as his own place of business was concerned because the name *Blue Goose* was used in the operation of several other automobile stations which were enumerated in this case, without objection by him. It was stated that the words *Blue Goose* were used in connection with stations in Bergenfield, New Jersey, and Hackensack, New Jersey. It was stated also that Levin's brothers owned or controlled one of such places. His brothers conducted another place mentioned, although Levin is said to have had an interest of some kind in that place. It also appears that one of the stations thus established—using the name *Blue Goose,* was sold to Tidewater Company about a year or more ago. It is indicated the Tidewater Company continued the use of the name *Blue Goose* in connection with that station. That was the Bergenfield station. The complainant Levin says that in September, 1928, Davis, whom it is said operated the defendant corporation and substantially controlled it, visited, with his wife, Levin's plant in

Newark, and there made known to Levin that he, Davis, was interested in opening up a place of his own and was desirous of inspecting the class of brake-machine Levin had installed in his place of business. Considerable has been said by counsel for the complainants in his summation apparently intended to indicate to the court that the brake appliances made use of by the complainants in the operation of the Newark business were of special value. Stress was laid upon the brake-machine in Levin's Newark plant. It was said there was but one other of its particular make within a great distance from the complainants' plant in Newark. It was said by one of the witnesses that the only other kind of such brake was in New York. Yet, I recall there was something said by Levin to the effect there was another such brake machine in Newark or Elizabeth. But that appears to me to be a matter of little significance in this case. The court is not concerned with the equipment utilized by these parties in the conduct of their places of business. The use of the equipment cannot be of any particular significance in determining the issue in this case. The principal grievance of complainants, if established by the proofs, is the use of the words *Blue Goose* and the use of the word *Super* as applied to the word *Service* in the servicing of automobiles, or the holding out to the public of those names, and particularly the word *Super* as applied to the servicing of automobiles. All of the other matters alluded to by counsel in argument, with respect to the character of equipment, is merely incidental to the conduct of the business by the respective parties. The defendant does not use the particular kind of brake machine used by complainants. Defendant uses an entirely different manufacture of brake machine. There cannot therefore be said to be any simulation by defendant of complainants' equipment in that respect; but there is no complaint herein, as I recall, of simulation of equipment. The principal charge seems to be, as stated by counsel for complainants—unfair trade, and an infringement of a trade-mark or trade name. I cannot appreciate from the proofs in this case that the complainants have any exclusive right to the use of

the words *Blue Goose* or the use of the word *Super* or the word *Service* in connection with their conduct of the business in the servicing of automobiles. The complainant Levin was very careless in his testimony, in a considerable number of instances. In one breath he testified that a certain happening or incident took place in the month of April, and within a few moments thereafter, in another breath he testified such happening or incident took place in the month of March, and shortly thereafter he testified he could not recall exactly when it took place. During the course of Levin's examination as a witness I was impelled to admonish him that he was required to tell the truth, the whole truth and nothing but the truth. I am convinced he did not tell the whole truth; he was conjecturing as to considerable of the matters he was testifying to. Counsel for the complainants experienced much difficulty, clearly observable to the court, and clearly manifest to counsel himself, in his endeavor to obtain from the complainant Levin, testimony as to the case which was set up in the bill of complaint, which counsel appreciated he was obliged to elicit proofs of to substantiate the complaint. It was due to no fault of counsel for the complainants that he did not elicit all the proofs he endeavored to elicit; he tried very diligently to do so. Counsel appreciated that the burden rested upon the complainants to substantiate the allegations of the complaint in order to obtain the relief sought in the prayer of the bill. The prayer of the bill *inter alia* is that the defendant, Blue Goose Super Service Station, Incorporated, its officers, agents and servants, be forever restrained from furnishing auto service to the motor public, and from using said name within the State of New Jersey in connection with such business; also that the defendant, its officers, servants and agents, be forever restrained from using in the conduct of its auto service station any names or styles similar to the name Blue Goose Auto Service, Incorporated, or Blue Goose Super Service Station, or any imitation of the name of complainant company, or the trade name of complainant Levin—Blue Goose Super Service Station. Complainant certainly seeks pretty broad relief when he prays the court to

grant relief as prayed in the bill, based on the allegations of the bill, and upon the proofs in this case. If the complainant Levin was seriously desirous of protecting the name he says he adopted, he might, instead of registering the name in the clerk's office of the county of Essex, as he says he did, but which has not been proved, have incorporated his business establishment in Newark and thus endeavor to pre-empt to himself the use of the desired name, as against others. He was not a stranger to corporate form of business; he had previously conducted the business in which he was engaged in West Hoboken for several years prior to going to the city of Newark, as a corporation. The defendant resorted to the expediency of incorporating the business he established, under the name which he now uses therefor. If Levin had pre-empted to himself by corporate means, or perhaps by registered trade name under the Names act, the name which he says he appropriated, the defendant may not have been able to make use of such name by incorporating another company and making use of the same name. There has been considerable perjury in this case. Counsel for the complainants has adverted to what he regards as an important piece of testimony to sustain the complainants' claim to show that there was unfair competition upon the part of the defendant as against the complainant Levin—the testimony of one Spaulding A. Smith. I was obliged to adjudge such witness guilty of contempt *in facia curiæ* because of his perjured testimony. I cannot give any credence to the testimony of such witness. It is a well known principle of law that if the court has just reason to believe that a witness is untruthful in one respect in his testimony, the court may feel warranted in considering him to be untruthful in many respects, or perhaps in all respects of his testimony. It is within the province of the court—where, as here, there is no jury—to determine where the truth lies, and to determine which witnesses are to be believed in the case. Such principle of law is referred to in *Riehl* v. *Riehl,* a decision by the chancellor, reported in *101 N. J. Eq. 15.* It is not merely because a witness narrates a statement that the court is obliged to believe

such statement. The court takes into consideration its observation of the mannerism of the witness while on the witness-stand, the credibility of the testimony as impressed upon the court in observing the witness' countenance, the frankness or hesitancy or evasiveness of the witness, and details which manifest themselves and are observable by the court during the examination of the witness. In this case I was impressed that neither the complainant Levin, or his witness Smith, told *the truth, the whole truth, and nothing but the truth.* An instance indicating that Levin was not entirely truthful, aside from what I have adverted to, was his equivocation as to the time Davis and his wife visited his Newark plant. He mentioned different periods, but finally, on cross-examination, he said it was September, 1928, when Davis and his wife visited his plant in Newark. Davis and his wife, and Davis' brother, all testified it was in 1927 when they visited that plant. I feel that I am obliged to regard the testimony of those three witnesses as more truthful than the statement of Mr. Levin, and particularly because Mrs. Davis, Mr. Davis and Mr. Davis' brother mentioned incidents which enabled them to substantiate the veracity of their statements in that respect. Counsel for the complainants has adverted in the course of his remarks to *laches.* He does not consider that *laches* should be attributable in this case to the complainants. He well knew before he came into court on this final hearing of the case that the court heretofore was impressed with that principle of law as against his clients, because in a matter *in limine,* the court filed a memorandum in this case, wherein reference was made to what the court regarded on that application to be the *laches* of complainants. What the court said in that respect is applicable to the case *sub judice.* I find in the *file* of this case the memorandum referred to; it was filed July 14th, 1930, and I therein stated among other things: "It appears that the complainants did not act *promptly* to apply for such equitable relief as they may have considered they were entitled to. Ten months elapsed (February to December, 1929) before complainants sought equitable relief. The complainants should have been diligent in their

application for equitable relief. They allowed the defendant to continue in operation for a period of approximately ten months within which time defendant built up an established business before they sought the relief now prayed." That which I stated therein is supported by the case of *Levi* v. *Schoenthal, 57 N. J. Eq. 244.* The court declared in that case, speaking of the person seeking the relief: "If he suffered an injury he was bound, if he sought a remedy by injunction, to bring his application before this court within such reasonable period as would inflict the least injury upon the defendant. He could not stand by, even complaining, until the defendant had by diligence and labor largely built up and increased the business, taking no legal steps whatever, and then demand the interference of this court to take it away and practically to give it to the complainant." The bill of complaint in the case *sub judice* was filed December 27th, 1929. One of the affidavits, that is, the affidavit of Smith, upon which the complainants relied, bears date December 5th, 1929. That affidavit indicates that as early as December 5th, 1929, the complainants were in a position to resort to this court for relief if they felt so disposed, yet for some unexplained reason it was not made use of until it was attached to the bill of complaint in this cause filed December 27th, 1929, twenty-two days later. It is a well known equitable maxim that a court of equity affords equitable relief to those who are diligent, and not to those who slumber on their rights. The complainant Levin knew in February 1929, that the defendant contemplated the use of the words *Blue Goose* and the word *Super* in connection with the servicing of automobiles. He has testified that in the latter part of February, 1929, he visited the place which the defendant was establishing—the place where defendant's business, in connection with which defendant was to make use of the name complained of, was to be so conducted. Well knowing that was to be done by defendant, complainants refrained from court action. Levin testified he visited a lawyer. What he visited him for or what happened has not been manifested in this suit, but a few weeks later, and this must have been

in the early part of March, 1929, he consulted with his solicitor Mr. Eichmann. It appears to have been in March when Mr. Eichmann was consulted by Levin, and the first thing Mr. Eichmann did was, on May 2d, 1929, to write a letter (*Exhibit C-7*) directed to the Blue Goose Super Service Station, 21 South Van Brunt street, Englewood, New Jersey, complaining therein—not in behalf of Levin, and not in behalf of Blue Goose Super Service, but in behalf of a concern referred to in his letter as Blue Goose Auto Service, Incorporated; the letter indicates it was not Levin and his Blue Goose Super Service that was complaining and seeking to have the defendant discontinue the use of the name. The letter reads: "The Blue Goose Auto Service, Incorporated, requested me to communicate with you with reference to the name your corporation is using at the present time which is practically an imitation of my client's name, and inasmuch as you are conducting a business similar to the one of my client, the use of the name which you well know tends to mislead people and perhaps make people think they are dealing with my client's corporation. Unless you take care of the change of the name of your corporation within three (3) days I will be obliged to commence suit in order to restrain the use of the name, and also hold you for any damage which my clients have sustained." It will be observed that Mr. Eichmann was there representing as his client Blue Goose Auto Service, Incorporated, not Mr. Levin trading under the name of Blue Goose Super Service Station. Furthermore, Mr. Eichmann, in that letter, said that unless something was done within three days he would be obliged to commence suit, yet the suit was not started in this case until December 27th, 1929, in other words, eight months later. The answer to that letter (*Exhibit C-6*) dated May 7th, 1929, addressed by Liebowitz & Pesin to Mr. Fred Eichmann, says: "Your letter of May 2d addressed to the Blue Goose Super Service Station in this city has been handed to me for response. I have been endeavoring to speak to you over the telephone but have been unsuccessful in getting you at your office. Will you kindly communicate with me at your earliest convenience." I have

afforded Mr. Eichmann ample opportunity to state fully the entire conversation that passed between himself and Mr. Liebowitz upon which Mr. Eichmann was predicating a claim that negotiations passed between himself and Mr. Liebowitz. In the detailing by Mr. Eichmann of his alleged conversation with Mr. Liebowitz he made no mention whatever as to the Blue Goose Super Service Station. Subsequently in his testimony and upon redirect examination by counsel for the complainants, he undertook to add what might have been regarded as the testimony he should have given in the first instance by saying that he did speak to Mr. Liebowitz and that he mentioned the words Blue Goose Super Service Station, Incorporated. I disbelieve Mr. Eichmann in that respect, and the reason I disbelieve him is because he was given full opportunity of not only detailing the conversation he had with Mr. Liebowitz, but also, if it was the truth that he had in mind the name Blue Goose Super Service Station that he intended to discuss with Mr. Liebowitz he would have made mention thereof in his letter of May 2d, 1929. In other words, according to Mr. Eichmann's statement, he wanted, in the interests of his client, to call attention to what he regarded as the improper use of a name. In the case of *Surprise Store* v. *Mintz, 1 N. J. Mis. R. 192,* is contained a statement which I consider applicable to the case which I am now considering in so far as the law of the case is concerned. The proofs before me show that Mr. Levin's established place of business is in Newark. The defendant's established place of business is in Englewood, approximately twenty-three to twenty-five miles distant. Upon what justifiable theory the complainants can hope to expect the court to believe that the conduct of the business in Englewood is to be prejudicial to the conduct of complainants' business in Newark is quite beyond my comprehension. There is no proof in this case (other than the testimony of Smith which I disbelieve for reasons stated) which would indicate any damage was done to the complainants' place of business in Newark chargeable to the operation of defendant's place of business in Englewood. True, as counsel for the complainants has argued in

his summation, the defendant Davis very candidly, and his wife likewise very candidly, mentioned that several of the customers that came to them in Englewood stated their automobiles had been serviced by complainant Levin's established place in Newark, and inquired whether the two concerns were under the same management, and when they were informed they were not, they then made known to Davis and his wife that they were displeased with the service rendered to them by the Newark establishment. Counsel for the complainants has referred to the case of *Cape May Yacht Club* v. *Cape May Yacht and Country Club,* reported in *86 Atl. Rep. 972.* It is published in our reports in *81 N. J. Eq. 454.* No particular benefit can be obtained by the complainants as to one part of the decision, and I refer to page 973, where the court indicates that in order to afford complainants relief the complainant's trade must be shown to be in danger of harm by the use of the name by the defendant in such a way as is calculated to deceive the public in the belief that the defendant's affairs, in the respect complained of, are those of the complainant. There is no such proof in this case, and I cannot appreciate, as I stated before, that the conduct of defendant's business in Englewood can affect the complainants' business in Newark which is twenty-three or twenty-five miles distant. And while I have that in mind, if my recollection serves me right, the case of *National Grocery Company* has reference to a proposition of that kind. That case is reported in *95 N. J. Eq.,* and the court there held there must be actual competition in business before there can be unfair competition. It has been held also that where a business is conducted exclusively in the southern part of the state, it cannot be said to compete with a business conducted exclusively in the northern part of the state, the two businesses being separated by a distance of twenty-five or thirty miles. In the case of *Surprise Store* v. *Mintz,* to which I have already referred, there is language which I consider applicable to the case before me, and I will read it: "This is not a case of operating a store in the immediate neighborhood of the place where the complainant has previously established its place of business and built up a

trade reputation, but it is a case of operating a store in another state, at a place fifteen miles or more distant from complainant's stores and at a place from which complainant's stores can be reached only by railroad, or a long trolley trip, continued by transfer to tube trains or ferryboats and in comparatively small factory and rural community as distinguished from a metropolitan district." In the same case the court mentions what I have in mind in this case about advertising. The court said: "In every community in which it maintains no store, but to which knowledge of the existence of its stores might be carried in any way and especially by New York newspapers in which it advertises, through the circulation of those newspapers in suburban communities even to a small extent." In the case I am now considering the complainants did not advertise in any newspapers other than in Elizabeth and Newark. Levin said he resorted to circular advertising, some of the circulars being paid for and given to him by merchants with whom he was doing business, the purpose of which was not only to advertise the merchant's goods, but also, incidentally, the complainants' business. The defendant does not advertise outside of Bergen county. The defendant does not solicit business outside of Bergen county. The defendant does not look for or anticipate business anywhere outside of Bergen county. The only business outside of Bergen county, as I recall from the proofs, which the defendant may hope to obtain is transient business, that is, automobiles operated from place to place which in the course of transit have occasion to pass the defendant's place of business or be in the vicinity thereof. Again in the *Mintz Case* the court said: "I am unable to believe that the defendant is a competitor of complainant. The parties do not deal with the same purchasing public. Surely no part of the New York city public comes to Passaic to buy from defendant, upon the belief that they are dealing with complainant and complainant has not convinced me that any part of the Passaic public would go to New York to buy from complainant, were it not for defendant's store. It does not appear that the corporate name of complainant has become associated in the minds of

the people of Passaic and its environs, to such an extent that they believe that defendant's store is connected with complainant's and that when they deal with defendant they are buying complainant's goods." Apropos of the language there used I declare in this case there is nothing in the proofs to indicate to the court that the complainants could reasonably hope to be favored with any of the business from Bergen county and particularly in the vicinity of Englewood, or that any of the business in Englewood or Bergen county would reasonably flow to the complainants if it were not for the establishment of defendant's business in Englewood. I am of the opinion there is no competition between the two business concerns. In the case of *Rosenthal* v. *Blatt, 80 N. J. Eq. 90,* the court said: "The test of whether the use of a trade name amounts to unfair competition is whether the public is likely to be deceived thereby." In that case the court (at *p. 91*) said: "This court may appropriately protect a complainant against unfair competition when it is found that the defendant is conducting a business in such manner that there exists upon the part of defendant express or implied representations that the business conducted by defendant is that of complainants." I find no proofs in this case to warrant the application of that principle of law to the benefit of the complainants in this case. I have in mind also the negligence of the complainants in seeking prompt redress from this court against the defendant if they really considered themselves aggrieved. "Acquiescence is an important factor in determining equitable rights and remedies. * * * Acquiesence in the wrongful conduct of another by which one's rights are invaded may often operate, upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctively equitable remedies to which he would otherwise be entitled. * * * The equitable remedy to which this *quasi*-estoppel by acquiescence most frequently applies is that of injunction, preliminary or final." *Pom. Eq. Jur. (4th ed.) 1676 § 816.* Complainants herein have not shown they sustained damage. Without damage the complainants can have no redress. I will advise an order dismissing the bill.