Complainant, on August 13th, 1940, purchased at chattel mortgage sale "the trade name New Jersey Guardian, all the cuts, typewriters, desks, miscellaneous office equipment, mailing lists, and related matters pertaining to the carrying on of the business of the New Jersey Guardian." The New Jersey Guardian
was a newspaper which defendant had been publishing. After the sale, defendant continued to publish a newspaper of the same style and, despite the sale of the name "New Jersey Guardian" to complainant, defendant continued to use that name for his newspaper. Thereupon *Page 291 
complainant filed this bill to restrain defendant from using the name.
Defendant asserts that the sale was invalid because the mortgage was not yet due. The mortgage was given to secure $387.80, payable in monthly installments of $50 each with interest, beginning June 10th, 1940. The June 10th installment was in default before the proceedings for the chattel mortgage sale were begun and the July and August installments were also in default before the sale was actually held. The mortgagee was at liberty, on default in the payment of any installment, to proceed to sale, in order to raise the amount then due him. PennsylvaniaCo., c., v. Broadway-Stevens Co., 105 N.J. Eq. 494. The circumstance that the whole debt was not due did not prevent foreclosure.
Defendant next argues that the sale of the trade name was void because it was a sale separate and apart from the good will and business in which it was used. Covell v. Chadwick (Mass.),26 N.E. Rep. 856; Falk v. American, c., Trading Co.
(N.Y.), 73 N.E. Rep. 239; Smith v. Yost (Ind.),125 N.E. Rep. 73. It appears that defendant owned no printing presses and had been accustomed to having his newspaper printed by a contractor. The property described in the chattel mortgage and in the bill of sale to complainant, comprised everything which defendant employed in carrying on his business, except cash and accounts receivable. The sale to complainant effectively transferred the good will and was a valid sale of the trade name, together with the property by means of which the newspaper was published.
When this case first came before me, I was much impressed by defendant's third point, namely, that complainant was not entitled to an injunction because he was not at all injured by defendant's continued use of the name "New Jersey Guardian." This supposed defect in complainant's case did not depend on any supposed invalidity of the sale of the name to complainant, or on any notion that complainant had abandoned his title, but on these circumstances: Complainant is a lawyer, dwelling and practicing in New York. He has never published a newspaper, and does not allege that he intends to publish one, or even that he hopes to sell to some *Page 292 
third party the equipment and good will of the Guardian. What difference to him that defendant is using the name? Of necessity, this is a bill to restrain unfair competition. Before there can be unfair competition, there must be actual competition.National Grocery Co. v. National Stores, 95 N.J. Eq. 588;97 N.J. Eq. 360. A trade name can have no existence in gross, unconnected with some business in which it is used. Jackman v.Calvert Distillers (Mass.), 28 N.E. Rep. 2d 430;Lawyers Title Insurance Co. v. Lawyers Title Insurance Corp.,109 Fed. Rep. 2d 35.
But on further reflection, I am of the opinion that complainant should have his injunction. He may not consider the time ripe for entering the newspaper field himself, or even for an attempt to sell. His opportunity may come when the approach of an important election may move some political enthusiast to revive theGuardian. Meanwhile, if defendant is allowed to use the title, complainant's right will be barred by laches. The circumstance that complainant has no immediate use for the good will and name "New Jersey Guardian" should not prevent him from asserting and preserving his title. Gold Seal Associates v. Gold SealAssociates. 56 Fed. Rep. 2d 452.
 I will advise a decree for an injunction. *Page 293