[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 427 
It was many years ago in the City of Vienna, Austria, that the Goldscheider family began to engage in the design and manufacture of ornamental and decorative figurines. Their statuettes and character figures through the channels of importation entered the markets of this country where within the field of that craft the name "Goldscheider" became relatively popular and preferential.
Figures of charming ladies with delicate skin tones and richly colored bonnets and gowns supplemented by attractive miniature models of children and animals soon achieved an increasing vendibility in the United States. The industry has become competitive.
The story of the present case, however, is one of relatively recent events. On September 1, 1942, the plaintiffs Walter F. Goldscheider and his son, Erwin F. Goldscheider, were evidently in need of additional capital, and they united with the three individual defendants in the organization of the Goldscheider-Everlast Corporation, which pursued the business of manufacturing and vending ceramic figurines at Trenton, New Jersey.
Irreconcilable discord intruded among them and on October 3, 1947, the two plaintiffs agreed to sell their interests as stockholders of the company to the three defendants. A written agreement of that date embodies the terms and provisions of the transaction. The following covenant of the agreement engages superior recognition in the consideration of this litigation:
Paragraph 8(b)(i) of Agreement provides as follows:
"The Purchasers shall on or before July 1, 1948 (i) cause Goldscheider-Everlast Corporation and its stockholders and directors to take such steps and do such things, execute, acknowledge and file in the office of the Department of State of New Jersey such documents as may be necessary to change the corporate title of Goldscheider-Everlast Corporation by eliminating therefrom the name Goldscheider or any name similar thereto." *Page 429 
On December 19, 1947, the three defendants organized the Goldcrest Ceramic Corporation to resume the business of the former Goldscheider-Everlast Corporation. On February 16, 1948, the two plaintiffs caused to be incorporated their own company under the title "Goldscheider, Inc." It is acknowledged that the two companies are competitors in the molding and sale of ceramic figurines.
The alleged grievance of the plaintiffs is that the adoption of "Goldcrest" as a part of the corporate name of the defendants' enterprise is a violation of the covenant of the agreement in that it is similar to the trade and corporate name "Goldscheider." The plaintiffs seek appropriate injunctive relief. However, the broad cardinal object of the complaint is to enjoin alleged unfair competition. Our former Court of Chancery has declared that unless there is, as here, actual competition, there cannot be unfair competition. National Grocery Co. v.National Stores, 95 N.J. Eq. 588, 123 A. 740; affirmed,97 N.J. Eq. 360, 127 A. 925; Baltimore v. Clark,131 N.J. Eq. 290, 25 A.2d 30; affirmed, 132 N.J. Eq. 374,28 A.2d 169. Nevertheless I venture to say that I think that the modern invocation of equity ought to depend more predominantly upon the character of the unfairness than upon the degree of competition.Cf. Edison v. Edison Polyform and Mfg. Co., 73 N.J. Eq. 136, 67 A. 392; Blue Goose Auto, etc., v. Blue Goose Super, etc.,110 N.J. Eq. 438, 160 A. 836; reversed, 110 N.J. Eq. 547,160 A. 316; 51 West Fifty-first Corp. v. Roland,139 N.J. Eq. 156, 50 A.2d 369. Vide, Annotation, 148 A.L.R. 12.
Competition in free and open markets, however intense, is desirable only when the competition is honest and scrupulous so that the dealer may strive to achieve success upon his own reputation and the quality of his own productions.
It has become a common practice for a manufacturer to adopt some trade-mark, label, sign or symbol to distinguish his or its own products from those of the same general type or class made by others. In numerous instances it is of supreme significance that principally by means of such indicia have the particular articles become known to the general *Page 430 
public. Hence a substantial counterfeit of such an established trade designation by a competitor may aside from the public interest well result in an unconscionable advantage to the one to the irreparable detriment of the other.
And so where the similarity between the labels and identification marks is sufficient to carry a false impression to the public mind, and is of a character to deceive the ordinary purchaser, buying with the caution normally exercised in such transactions, the injured party may apply to a court of equity for redress. Lord-Chancellor Halsbury said: "For myself I believe the principle of law may be very plainly stated, and that is that nobody has any right to represent his goods as the goods of somebody else."
Our reports are alive with decisions relative to actions for alleged unfair competition. Citations of some of the representative adjudications will suffice: Wirtz v. EagleBottling Co., 50 N.J. Eq. 164, 24 A. 658; InternationalSilver Co. v. William H. Rogers Corp., 67 N.J. Eq. 646, 60 A. 187; Eureka Fire Hose Co. v. Eureka Rubber Mfg. Co.,69 N.J. Eq. 159, 60 A. 561; affirmed, 71 N.J. Eq. 300, 71 A. 1134; Cape May Yacht Club v. Cape May Yacht and Country Club,81 N.J. Eq. 454, 86 A. 972; National Biscuit Co. v. PacificCoast Biscuit Co., 83 N.J. Eq. 369, 91 A. 126; Hilton v.Hilton, 90 N.J. Eq. 564, 107 A. 263; J.B. Liebman Co.,Inc., v. Leibman, 135 N.J. Eq. 288, 38 A.2d 187; Weiss v.The Stork Gift Shop, 137 N.J. Eq. 475, 45 A.2d 688.
The justifiable adaptation of the principle to the special circumstances of the given case is customarily, as here, the controversial point. The degree of resemblance or similarity between the names of two companies which will warrant judicial intervention is not capable of exact definition. No inflexible rule of universal application can be formulated. So varied and divergent are the facts surrounding each case that the authorities upon the subject are not decidedly helpful.
It is observed that the contractual obligation of the individual defendants was "to change the corporate title of Goldscheider-Everlast Corporation by eliminating therefrom the name Goldscheider or any name similar thereto." Our Corporation *Page 431 
Act expressive of public policy ordains that "The name shall not be one already in use by another existing corporation of this state, or so similar thereto as to lead to uncertainty or confusion." The statutory restriction is inapplicable to the present case because, of the two corporate titles that of the defendant is the senior.
Questions outside of the arguments of counsel have a frequent habit of plaguing me. Here, for example: Conscious of the considerations of public policy, is a restrictive covenant to refrain from using a trade name valid if unattached to any business or property right of the covenantee? I need not grapple with that legal conundrum in the present case because factually I am not persuaded that there is any ostensible or euphonic similarity or resemblance between the present corporate titles of "Goldscheider, Inc.," and "Goldcrest Ceramic Corporation." For a like reason it becomes unnecessary to determine whether the defendant corporation is in anywise contractually obligated by the covenant contained in the agreement of October 3, 1947, to which it was not a party.
It is, however, the practice of the plaintiffs to affix to their products a label upon which appears the name "Goldscheider." The label attached to the products of the defendants bears the word "Goldcrest." Obviously the alleged similarity is confined to the first four letters of the trade names. While complete identity of names is not a necessary requirement for equitable relief, yet the similarity must be manifestly such as in reasonable probability is calculated to deceive purchasers exercising ordinary discrimination. Do the designations "Goldscheider" and "Goldcrest" in the light of all of their representative characteristics have that degree of deceptive similarity? I think not.
Fundamentally, it seems to me that a purchaser would naturally suppose that "Goldscheider" is a family name, presumably of the artist, designer, or perhaps manufacturer of the figurine, whereas the same purchaser would inferentially conjecture that "Goldcrest" is a typical trade name. The following illustrations occur to me. Compare, "Hilton," "Merton," "Humphrey's," "Rogers," "Hollander" with such *Page 432 
names as "Uneeda," "Blue Goose," "Cocomalt," "Juvenile Shop," "Philadelphia Seal," "Silver Crest," "Walk-Over." Nor are the names "Goldscheider" and "Goldcrest" eadem sonantia such as the following examples taken from reported cases: "Keen" and "Keene;" "Hutson" and "Hudson;" "Coonrad" and "Conrad;" "Emarly" and "Emiley;" "Zu Zu" and "Hoo Hoo;" "Coca Cola" and "Gay Ola."
In the purchase of such articles as figurines and kindred art objects, the customers comprise a relatively special group who quite naturally exercise circumspect discrimination in their selections. They are less likely to be misguided concerning the source of the article and the identity of the vendor than shoppers in general who buy the more commonplace and less expensive commodities as a regular occurrence. And so, the degree of permissible similarity of the trade names has a logical and pragmatical relationship to the likelihood of misguidance.
The inherent merit of equity jurisprudence abides in the requisite propensity of the judge to discern and admeasure the situations and interests of the respective parties. It is not normally judicious to amputate the hand to remove a splinter in a finger.
Here it is not to be ignored that the individual plaintiffs voluntarily sold their interests in the Goldscheider-Everlast Corporation. The defendants paid a consideration for the privilege and opportunity to continue the corporate enterprise subject, of course, to the terms of the agreement of sale. The defendant corporation became the owner of the designs and molds, the lists of customers, and the right to pursue the business in the same factory and at the same address as formerly. The plaintiffs have chosen to re-enter business as a competitor in the same city.
If some confusion has resulted from the fact that the Goldscheiders now operate at a new address or from the circumstance that the products of the two companies are in many respects indistinguishable, I am not justified in bending such consequences to the favor of the plaintiffs in the present action. *Page 433 
While neither proof of the occurrence of actual confusion nor of a veritable, as distinguished from a presumptive, fraudulent intent on the part of the defendants to practice profitable deception is an indispensable element to sustain a cause of action in this category, yet the existence of either becomes a factor of some material significance in the dispensation of equitable relief.
That these defendants were motivated by a fraudulent intent to simulate the name of Goldscheider is not sustained by the evidence. Indeed, the testimony has revealed in detail the somewhat unique and fortuitous circumstances under which the defendants came to adopt the designation "Goldcrest." Where defendants in the selection of their trade names have acted in good faith and without any motive to deceive, a court of equity is the more hesitant to exercise its extraordinary injunctive power unless the need and justification for such relief is clearly established.
It is my recollection that all other controversial issues projected by the pleadings, including the counterclaim were adjusted during the course of the trial.
The injunctive relief sought by the plaintiffs is denied, and upon that issue final judgment will be in favor of the defendants.