## CHOSEN FREEHOLDERS OF PASSAIC COUNTY v. JOHN J. SLATER.

Argued February Term, 1913—Decided July 28, 1913.

The clerk of the county of Passaic in the receipt of fees for services under the naturalization laws of congress acts as a federal and not a state agent, and the county is not entitled to receive such fees under *Pamph. L.* 1906, *p.* 76, which changed the compensation of the clerk to a salary in lieu of the fee system.

---

On motion to dismiss the complaint.

Before Justice MINTURN.

For the motion, *William I. Lewis.*

*Contra, Jacob Willard De Yoe.*

The opinion of the court was delivered by

MINTURN, J.   The motion is to strike out the complaint. The action was brought to recover the fees collected by defendant for services in naturalization matters under the acts of congress.

The basis of the claim is the act of the legislature of 1906 (*Pamph. L., p.* 76; *Comp. Stat., p.* 4643), under which the clerk is required to surrender all fees to the county in lieu of a substituted salary. The second section of the act provides that the fees, costs, allowances, percentages, and all other perquisites of whatever kind, which by law, &c., the clerk is en-

titled to receive therefor shall become the property of the county. The crucial inquiry, therefore, is to determine what the legislature contemplated by the use of the words "by law." In other words, whether the legislature contemplated the surrender of all fees received by the clerk, or only those received by him under the laws of the state.

The clerk had received, as the delegated agent of the federal government, certain fees under the acts of congress for naturalization services performed by him, and those he insists he is entitled to hold as his own since they are not received by him under the laws of the state, but under the act of congress. The act of 1906 was meant to change the public policy of the state with reference to the payment of its officials, by substituting a salary for the fees which up to that period had gone to the officer in payment for his services.

The mischief to be overcome, therefore, was the practical farming out of the state's revenues to be exploited by the individual. But in accomplishing this purpose, can it be supposed that the legislature was attempting to impose this state policy upon the federal government, as a federal policy, and thus legislate for congress, or, if it so contemplated, is it supposable that it could constitutionally effectuate such legislation?

In order to so construe legislation of this character, it must be clear that such was the legislative intent, and if the legislature had so intended, we must assume that it would manifest its intent by language so clear as to leave no room for construction.

In the absence of such a clear intent it is the reasonable assumption that the state in legislating had in mind conditions existing within its jurisdiction, and not within a jurisdiction specifically committed by the federal constitution to congress, and over which the state could constitutionally exercise no control or supervision in the absence of federal legislation delegating the power. In performing this federal service the clerk is considered *pro hac vice* a federal and not a state agency, and it is not within the power of the state to

control a federal agency by legislation, where the subject-matter of the power as in this case is a recognized constitutional department of the federal government. *M'Culloch* v. *Maryland, 4 Wheat.* 316; *Gardner* v. *State, 27 Oklahoma* 1; *Eldredge* v. *Salt Lake County, 37 Utah* 188.

Statutes of other states containing language of similar import have received a construction of the highest courts of those states, in accordance with the proposition above stated. *Eldredge* v. *Salt Lake County, supra.*

We must assume, therefore, that the legislature intended to pass a legal and not an unconstitutional act. The fees of the county clerk were clearly within its power to control, but not so the fees of a federal agency acting under an act of congress, passed in pursuance of the exclusive power delegated to it by section 8, article 1 of the federal constitution. Therefore, when the legislature in the act of 1906 provided that the fees be surrendered by the clerk as *quid pro quo* for a substituted salary, it contemplated a change of state and not a change of federal policy in the payment of its officials; and when it provided that the fees to be surrendered were those received "by law" and for "official acts or services," it contemplated the law of the State of New Jersey, and not those fees received by the defendant under the laws of the United States, in his capacity as an agent of the federal government, acting under its laws, and governed in the performance of his duties and charges by the provisions of the federal statutes.

The case of *Rushworth* v. *Judges of Hudson County, 29 Vroom* 97, does not militate against this conclusion, since its only effect is to enunciate the principle that in regulating the procedure of its own courts the legislature in nowise contravenes the constitutional provision regarding the enactment by congress of naturalization laws, the administration of which is conceded by acts of congress, to the state courts.

The construction, therefore, given to the statute in question is that it was intended to change the state policy of remunerating officials for their services as state officers, and

was not intended to apply to fees received by such officers as compensation for the discharge of duties performed by them as agencies of the federal government.

This conclusion leads to a dismissal of the complaint.