31 C.C.P.A. (Patents)

CAMPBELL PRODUCTS, Inc., v. JOHN WYETH & BRO., Inc.

Patent Appeal No. 4905.

Court of Customs and Patent Appeals.

June 26, 1944.

Walter M. Fuller and E. W. Shepard, both of Washington, D. C., for appellant.

Thomas L. Mead, Jr., of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is a United States Patent Office trade-mark opposition appeal. The appellant-applicant applied in the Patent Office for registration of the trade-mark "Alutropin." Appellee-opposer filed notice of opposition to the registration of said mark, basing its opposition upon the prior use and registration of its trade-mark "Alulotion". Priority of use by appellee is not disputed. Concerning appellant's mark, we quote the following from appellant's brief:

"Beginning in March, 1941, the Appellant-Applicant, Campbell Products, Inc., after extended investigation as to its merits by the Department of Therapeutics, New York University, College of Medicine and in the wards of Belleview Hospital, New York City * * * first marketed its trade-marked product 'Alutropin,' in accordance with its invariable custom, as an ethical preparation solely through the medical profession * * *.

"Such medicinal product is a mouth-administered, nonpoisonous, collodial aluminum-hydroxide fortified with another of the Applicant's trade-marked products 'Novatropine' (homatropinemethylbromide) for

the treatment of peptic-ulcer and gastric hyperchlorhydria (hyperacidity), and it has been supplied in tall, 12-ounce, clear-glass, rectangular bottles bearing gray-and-blue labels describing the product and displaying in addition the following: 'Warning: Use cautiously if dryness of the throat occurs: discontinue if rapid pulse or blurring of vision appears.' 'Caution: To be used only on the prescription of a physician.' 'Shake Well.' * * *

"Such long, narrow, substantially-rectangular labels * * * state no dosage or frequency of use because it is essential, for safety and for the preservation of the established good reputation of the Applicant's product, that these be determined by the physician, depending upon the condition of the patient, and specified in his required written prescription."

Opposer's registered mark is the word "Alulotion." It is pointed out by appellant that appellee's trade-marked product is a "poisonous, externally-applied lotion for the treatment of that repulsive, highly contagious, skin-disease Impetigo contagiosa * * *," and appellant states (the record is silent on the point) that in order to comply with the requirements of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., since the main ingredient of the product is poisonous mercury, appellee is required to state also, in connection with its mark, the following (which appears in the same size letters as the mark): "Ammoniated Mercury with Kaolin." Appellee's goods are sold upon physicians' prescriptions in a short, small, 3-ounce blue bottle, which does not disclose the exact color of its contents but makes the contents have the appearance of being milky and slightly darker than the product of appellant. The label on appellee's bottle is oval-shaped. Near the top the word "Wyeth's" appears in script. Below that is the word "Alulotion", with the notation "Reg. U. S. Pat. Off." in very small type. The latter notation is followed by the words "Ammoniated Mercury with Kaolin" in the same size type as the trade-mark. The label then points out the ingredients—ammoniated mercury 5%, Kaolin 15%, and aluminum hydroxide 2.3%. Then appears the statement, "Poison—External Use." There are other instructions as to use, and the injunction to shake well and to be used only on the prescription of a physician. Appellant states that appellee's lotion is used on the skin

after removal of the scabs resulting from the disease.

The Examiner of Trade-mark Interferences held that there was no reasonable likelihood of confusion, dismissed the notice of opposition, and further adjudged that the appellant was entitled to register its mark. He had the following to say:

"These goods of the parties, while they are believed to possess the same descriptive properties, are thus specifically different medicinal preparations, and, other than that they contain an aluminum compound as a common ingredient, the differences therebetween in composition correspond to the wide differences in the respective essential properties and uses.

"The marks 'Alutropin' and 'Alulotion' here involved contain obvious resemblances. The terminal portions 'Tropin' and 'Lotion' constituting the major portions thereof, however, are quite different in significance and serve also to emphasize the differences in the properties and uses of the goods. When these differences in marks are viewed together with those present in the goods to which they are affixed, the examiner is persuaded that the marks may be concurrently used in trade without reasonable likelihood of confusion. Particularly so, since it is to be expected that products of this type will be sold under conditions which will greatly minimize any possibility of confusion or mistake. * * *"

Upon appeal, the First Assistant Commissioner of Patents (acting for the commissioner) reversed the decision of the Examiner of Trade-mark Interferences, held that the goods of the parties were of the same descriptive properties and that the trade-marks were confusingly similar, and sustained the opposition. 56 U.S.P.Q. 469. From the decision of the commissioner, appellant has here appealed.

Appellant argues that, by reason of the differences between the packages, labels, and use of the merchandise, as well as for other considerations presently stated, there is no likelihood of confusion flowing from the concurrent use of the two marks on the respective goods, and that the decision of the commissioner should be reversed. Appellant further argues that since the goods of both parties are used only on physicians' prescriptions (thus assuring less likelihood of confusion than otherwise); that since appellee must put on its label in large letters the phrase "Ammoni-

ated Mercury with Kaolin"; that since the medicines are used for wholly different purposes, one internal and the other external; that since the goods are packaged differently (as before stated); that since there is no competition between the two medicines; that since one could not be used for the treatment of the diseases for which the other is recommended; that since the meanings of the words "Alulotion" and "Alutropin" are wholly different; and that since appellee has no monopoly on the term "lotion" and was not the originator of the syllable "Alu" (which is supposed to signify alumina) in connection with a trademark, there is no probability of any confusion resulting.

We are in agreement with the holding of the commissioner. It is too obvious to require discussion here that the marks "Alulotion" and "Alutropin" are quite similar in sound and appearance, and that the goods are of the same descriptive properties within the meaning of the Trade-Mark Act, 15 U.S.C.A. § 81 et seq. The prefix "Alu" in both marks evidently refers to an ingredient common to both products. While they are both sold on physicians' prescriptions, and while appellee's product (according to appellant's statement) is required, under the Federal Food, Drug and Cosmetic Act, to be sold with certain printed matter on the label, it does not necessarily follow that these conditions may continue to prevail. See William S. Merrell Co. v. Anacin Co., 109 F.2d 339, 27 C.C.P.A., Patents, 847. Moreover, it seems to us that where ethical goods are sold and careless use is dangerous, greater care should be taken in the use and registration of trade-marks to assure that no harmful confusion results. The shape of the bottles in which the preparations are sold and the color, shape, and other features of the labels, etc., are subject to change. Since they are both sold from the same shelves in the drug stores, it is our view that the commissioner was correct in concluding that the goods of the parties are of the same descriptive properties and that the trade-marks are confusingly similar.

Appellant relies largely upon a case decided by the Sixth Circuit Court of Appeals, Solventol Chemical Products, Inc. v. Langfield, 134 F.2d 899, 903, where "Solventol" was allowed registration over "Solvite", the court holding that both marks being highly suggestive, other persons likewise had the right to use suggestive marks for similar goods. It stated that the marks "look unlike, are spelled differently and are phonetically dissimilar." Attention was called to the fact that neither of the marks in question was arbitrary or fanciful. It was also pointed out that there was some difference in the descriptive properties of the goods. The merchandise of one party was a cleaning preparation which, when mixed with gasoline, was used for cleaning garments, draperies, etc., while the merchandise of the other party was used for cleaning floors and walls.

It is obvious that considerations which there influenced the court are not present here, and the case is not authority supporting the contentions of appellant here. Moreover, this court in Langfield v. Brady, 101 F.2d 530, 26 C.C.P.A., Patents, 908, which involved the marks "Solvoline" and "Solvite", held that the marks were confusingly similar and that the goods of the respective parties (a dry-cleaning fluid and a dry-cleaning soap) were of the same descriptive properties and denied registration of the mark "Solvoline." And in Langfield v. Solvit-All Corporation, 49 F.2d 480, 18 C.C.P.A., Patents, 1313, where the marks were "Solvit-All" and "Solvite" and the goods, respectively, were sanitary solvents for cleaning toilet bowls and similar articles, and a cleaning preparation for garments, draperies, etc., our holding was substantially the same as in Langfield v. Brady, supra.

For reasons which are obvious and need not be discussed here, the cases relied upon in the decision of the Examiner of Trademark Interferences are not controlling.

We think the case to which appellee has called our attention—Guggenheim v. Cantrell & Cochrane, Ltd., 56 App.D.C. 100, 10 F.2d 895, 896,—is quite pertinent. In that case Mr. Justice Robb, speaking for the court said:

"In this court, it has been repeatedly declared that there is neither legal nor moral excuse for even an approximate simulation of a well-known mark applied to goods of the same descriptive properties, and that, when an attempt to effect such simulation becomes apparent, the two marks should not be examined with a microscope to detect minute differences, but, on the contrary, should be viewed as a whole, as the general public would view them; in other words, that the points of similarity are of greater importance than the points of difference. * * *"

It seems to us that the following cases are in point, although it has many times been said that the decision in cases like that at bar is rarely controlled by decisions in other cases, since the facts almost invariably differ, and each case must rest on its own bottom: Parke, Davis & Co. v. G. F. Harvey Co., 141 F.2d 132, 31 C.C.P. A., Patents, —; McKesson & Robbins, Inc.; Etc., v. Leonard James Co., 129 F.2d 563, 29 C.C.P.A., Patents, 1137; Lever Brothers Co. v. Sitroux Co., 109 F.2d 445, 27 C.C.P.A. Patents, 858; William S. Merrell Co. v. Anacin Co., supra; Kotex Co. v. McArthur, 45 F.2d 256, 18 C.C.P.A., Patents, 787; and Malone v. Horowitz, 41 F.2d 414, 17 C.C.P.A., Patents, 1252.

We think that the commissioner arrived at the right conclusion, and his decision is affirmed.

Affirmed.