34 C.C.P.A.(Patents)

**VAN PELT & BROWN, Inc., v. JOHN WYETH & BROTHER, Inc.**

Patent Appeal No. 5275.

Court of Customs and Patent Appeals.

April 22, 1947.

GARRETT, Presiding Judge, dissenting.

Emory L. Groff, of Washington, D. C., for appellant.

Thomas L. Mead, Jr., of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

On June 4, 1943, appellant filed its application, Serial No. 461,155, for the registration of the trade-mark "Vanogel" as applied to a medicinal preparation in liquid or tablet form, containing colloidal aluminum hydroxide for treatment of gastric duodenal ulcers. It alleged that the said mark was used on a printed label attached to the container of the goods and that it had been in continuous use in appellant's business since February 21, 1942.

On September 9, 1943, appellee filed its notice of opposition to said registration based on the confusion-in-trade clause of section 5 of the Trade-Mark Act of 1905, 15 U.S.C.A. § 85, relying on registrations of its trade-mark "Amphojel," dated February 2, 1937, on an application dated September 26, 1936, as applied to "Palatable Emulsoid of Aluminum Hydroxide in Distilled Water; registration No. 360,368, dated September 13, 1938, on an application dated May 16, 1938, for a "Gastric Drip Apparatus;" and registration No. 370,518, dated August 29, 1939, on an application dated March 25, 1939, as applied to "Medicinal Compounds for Treatment of the Gastro-Intestinal Tract," alleging that said registrations of the mark at the time the notice of opposition was filed were valid, subsisting, unrevoked and uncancelled.

Appellee further alleged that appellant had been advised by it, prior to the date of filing the involved application, that its trade-mark was considered to be an infringement of and confusingly similar to appellee's involved registered mark.

On November 16, 1943, appellant filed its answer traversing the allegations in the

notice of opposition and alleging as a further answer, among other things, that the trade-mark of appellee does not indicate origin of ownership of the products to which it is applied and is a word merely descriptive of the goods and the character thereof with which it is used.

Appellee took testimony and introduced certain exhibits in evidence to prove that it was prior in time of use of its mark to the earliest date alleged by appellant.

The testimony on behalf of appellant appears by stipulation between counsel for the parties and is to the effect that it had used the trade-mark "Vanogel" in intrastate and interstate commerce since September 3, 1940; that in a search through the Patent Office and literature of the drug manufacturing industry listing trade-marks and trade names, nothing was found, in the opinion of the president of appellant, which was similar to appellee's mark; that appellant's product was sold in interstate commerce through wholesale drug distributors, hospitals, retail drug stores and also brought to the attention of dispensing physicians; and that it spent many thousands of dollars in promoting the sale of its product by means of leaflets, cards, and blotters and in the expense incident to the activities of its "detail men" calling on physicians.

The Examiner of Trade-Mark Interferences in his decision, dated November 21, 1944, held that appellee had established prior use of its mark; that the goods appeared to be identical; and that the only question for determination was whether or not the marks are similar.

With reference to appellant's contention that appellee's mark is merely descriptive and, therefore, the latter may not intervene since the mark relied upon by it is not a mark "owned and in use" as provided for in section 5 of the Trade-Mark Act of 1905, the examiner held that the validity of appellee's registered trade-mark could not be challenged in an opposition proceeding, citing Englander, etc., v. Continental Distilling Co., 95 F.2d 320, 25 C.C.P.A., Patents, 1022, and cases therein cited and reviewed.

The examiner held that while the final syllables "Gel" and "Jel" of the marks are descriptive of the products, they are of but minor concern in considering the similarities between the opposing marks and that the remaining parts thereof contain certain similarities, particularly in the "A" and "O" sounds. He believed the similarities to be such that when the marks are considered in their entirety, liklihood of confusion would result and accordingly sustained the notice of opposition.

Upon appeal the decision of the Examiner of Trade-Mark Interferences was affirmed by the Commissioner of Patents. From that decision, 66 U.S.P.Q. 265, this appeal was taken.

The commissioner in his decision stated that the only questions involved, as agreed and argued by both parties, were whether appellee has the right to qualify under the confusion-in-trade clause of section 5, supra, and whether the marks so nearly resemble each other that confusion in trade would be likely by reason of their use upon identical goods.

The commissioner held that in an opposition proceeding the validity of a registered mark may not be challenged under the Trade-Mark Act of 1905, citing the Englander case, supra.

With respect to the contention that appellee's mark does not in fact denote origin or ownership of the goods to which it is applied and is merely a word which is descriptive of the character, qualities and ingredients of the goods upon which it is used, the commissioner pointed out that if that contention were true, he would be compelled to reverse the decision of the examiner pursuant to the principles laid down in the case of Standard Paint Co. v. Trinidad Asphalt Manufaturing Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536. In support of that contention it is stated in the decision of the commissioner that counsel for appellant argued that the syllables "Ampho" signify and mean "amphoteric" and that the suffix "Jel" signifies a jel form of aluminum hydroxide. In the opinion of the commissioner that argument presupposed considerable knowledge of chemistry and origin of words on the part of the purchasing public and presented the question as to whether the mark "Amphojel" had the same meaning to the purchaser as

if it were "Amphoteric Aluminum Hydroxide."

The commissioner held the portion of the mark "Ampho" not to be synonymous with "Amphoteric," citing Webster's New International Dictionary, second edition, in which it appears that the meaning of the expression "Ampho" is "A combining form, from Greek ampho, meaning both, as in amphopeptone," which latter term is defined by the same authority as "a product of peptic digestion, regarded as a mixture of hemipeptone and antipeptone." The commissioner reasoned that since "Amphopeptone" means two kinds of peptone, "Amphojel" would mean two kinds of "jel" and it was not contended that the name of appellee's product had any such meaning.

The commissioner further held that the mark "Amphojel" does not necessarily mean "amphoteric jel" because, even though "amphoteric" may mean a substance which according to the lexicographers and, the record "can act either as an acid or a base," on the same authority the expression is also defined as "partly one and partly the other; chem. (a) capable of reacting either as electropositive or as electronegative. * * *" The commissioner then concluded that the mark "Amphojel" is not descriptive of the character, qualities and ingredients of appellee's goods on which it is used.

On the issue as to whether or not the involved marks are confusingly similar when used on identical goods, the commissioner noted that the first syllables of the marks differ and that the endings thereof are substantially the same. He held that the sounds of the " * * * endings render the entire marks so similar in appearance, sound and suggestive meaning that, notwithstanding the difference between the first part of the marks, their concurrent use on goods of the same descriptive qualities would be likely to cause confusion and mistake in the mind of the public and to deceive purchasers. * * *"

It appears that on May 6, 1942, counsel for appellee notified appellant by letter not only that its trade-mark was considered to be too similar to the trade-mark of appellee, but also that appellant was marketing its goods with a label having the same distinctive color of blue ink as used on the labels of appellee. Appellant in its answer to that letter denied any intention of infringing upon appellee's trade-mark rights or to in any way imitate the manner in which appellee's goods were dressed and styled. It was also stated that in the opinion of counsel for appellant there was no basis for confusion between the labels of the parties; that appellee had not made such exclusive use of blue bands and ink as to render that color of secondary significance; and that appellant's product is contained in brown glass bottles, whereas the product of appellee is sold in blue bottles. The letter further stated that it was obvious both trade-marks are different and in view of the extensive use in other connotations of both "Ampho" or "Amph" as well as such use of the suffixes of the marks, it was not believed that appellee's mark had any generic scope and that that was confirmed by the three different registrations of the word that had been obtained by appellee.

The commissioner in holding the marks to be confusingly similar, stated that confusion would be more probable " * * * because the applicant obviously attempted to capture the good will built up by another by the deliberate adoption of a confusingly similar package dress of the opposer, of which notice is taken as was done by the United States Court of Customs and Patent Appeals in Parks, Davis & Co. v. G. F. Harvey Co." That decision appears in 141 F.2d 132, 31 C.C.P.A. Patents, 879.

It is true that visually the marks "Vanogel" and "Amphojel" are readily distinguishable. They both, however, have the same number of syllables, the suffix of each is pronounced the same, when spoken both have the same cadence and have a very little distinguishable difference in sound.

The marks, in our opinion, possess too many similar characteristics when applied to identical goods to warrant registration by appellant. Furthermore, it cannot be said that appellant was not aware of appellee's objection to the use of both the trade-mark "Vanogel" and the dress of the package. Appellant was so notified over one year prior to the date of its ap-

plication. Nevertheless, with a broad field from which to select a trade-mark for its involved goods, it applied for registration of a mark which it must have known was considered by appellee as likely to injure it in its business. It appears to us, in view of the circumstances of this case, as it did to commissioner, that appellant was attempting to profit by the good will built up by appellee in deliberately adopting a confusingly similar package dress in connection with the mark which it sought to register. We think what was said in the Harvey case, supra, may well apply here.

Appellant contends in this court for the first time that appellee's registrations of the mark "Amphojel" should be cancelled. In support of that contention it cites order No. 3804 of the Patent Office, dated March 17, 1944, effective May 1, 1944, in which it is stated that pleadings and procedure with respect to opposition and cancellation proceedings are to be governed by the Federal Rules of Civil Procedure for the District Courts of the United States, 28 U.S. C.A. following section 723c, except as otherwise provided. Appellant then called to our attention in its brief Rule 13(a), reading as follows: "(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Until the effective date of order No. 3804 of the Patent Office, it has been the settled law of this jurisdiction that the validity of a registered mark cannot be challenged in opposition proceedings, Englander, etc., v. Continental Distilling Co., supra, and we are not now holding that such is not the law at the present time. However, that was the law at the time this proceeding was instituted and, of course, the law by which this case must be adjudicated. Counsel for appellant, evidently conversant with that law, did not seek cancellation of appellee's mark below. Appellant's entire argument, in here seeking cancellation, is based upon the contention that the latter's mark "Amphojel" is descriptive of appellee's goods. We do not agree with either his argument or his contention for the reasons given by the Commissioner of Patents. Furthermore, it seems to us that if appellant had any faith in such contention, it would have been made in the tribunals below. It had ample time to do so because the decision of the examiner, as heretofore set out, is dated September 21, 1944, and that of the commissioner is dated August 1, 1945, and the Patent Office order, heretofore referred to, became effective on May 1, 1944. The question of cancellation, in our opinion, is an afterthought and may not be raised here under the pleadings as they were drawn, nor can they properly be raised for the first time in this tribunal. Moreover, there is nothing in the reasons of appeal which would bring the question of cancellation, even if it were proper, before us for decision.

We are entirely in agreement with the decision appealed from and for that reason it is affirmed.

Affirmed.

GARRETT, Presiding Judge, dissents.