MORGENSTERN CHEMICAL COMPA-
NY, Inc., Appellant,

v.

G. D. SEARLE & COMPANY.

No. 12326.

United States Court of Appeals
Third Circuit.

Argued Jan. 8, 1958.

Decided March 12, 1958.

Copal Mintz, New York City, for appellant.

Frederick B. Lacey, Newark, N. J. (Shanley & Fisher, Frank Lewis Bate, Donald A. Robinson, Newark, N. J., Howard P. Robinson, Chicago, Ill., on the brief), for appellee.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, Morgenstern Chemical Company, Inc., appeals from the dismissal of its complaint in the District Court for the District of New Jersey and the entry of judgment in favor of the defendant, G. D. Searle & Company, in an action brought to enjoin the defendant from infringing, a trade-name belonging to the plaintiff and for an accounting of profits. Jurisdiction rests on the diversity of citizenship of the parties. The facts of the case, which are undisputed, are fully set out in the opinion of the district court. 150 F.Supp. 726. For the purposes of this appeal it is sufficient to state that the plaintiff company, a manufacturer and distributer of pharmaceuticals, started in 1950 to promote and in 1951 to market tablets, under the name Micturin, to be taken orally for the relief of infections in the urinary tract in cases of nephritis, pyelitis, urethritis, cystitis, and prostatitis, which were to be dispensed only upon physicians' prescriptions. The name Micturin was conceived and adopted because it was suggestive of miction (urination) and micturition (the passage of urine), each of which is derived from the Latin micturire, meaning to urinate. The defendant company, also a manufacturer and distributer of pharmaceuticals, in 1954, with full knowledge of plaintiff's prior use of the name Micturin, started to promote and market tablets, under the name Mictine, which were also to be taken orally and dispensed only on physicians' prescriptions, for diuretic therapy in cases of hypertension, congestive heart failure, glomerulonephritis, pyelonephritis, and nephrosis. Both Micturin and Mictine are derived from or based upon the same Latin root and are intended to suggest urination. They are, however, prescribed for radically different conditions and for different uses and desired effects. There was evidence that it was extremely unlikely that a physician would prescribe or a pharmacist dispense the product of one of the parties

for the treatment of a condition for which the product of the other was indicated.

The district court found that the plaintiff owned a valid common-law tradename "Micturin" which was entitled to legal protection. However, because the two products are dispensed only upon physicians' prescriptions, the court limited its inquiry to the question whether there was a likelihood of confusion within the specialized group composed of physicians and pharmacists. Upon the evidence, and taking judicial notice of the high standards of care required to be followed in both these fields, the district court concluded that there was no likelihood of confusion between the two names. Nonetheless the court found obvious similarity in derivation, suggestiveness, spelling, and sound in careless pronunciation between Micturin and Mictine as applied to pills to be taken by mouth for therapeutic purposes and stated that if the two names had been employed to designate medicinal tablets designed for the alleviation or cure of the same or closely related human ailments, it would have no difficulty in finding a confusing similarity between them. However, since the pills are not designed for the same ailments, the district court concluded that there was no confusing similarity in the two names and that the plaintiff's tradename was not infringed. Accordingly, the court refused to enjoin the defendant's use of the trade-name Mictine. The court also found that, since the products were non-competing and the defendant did not seek to palm off its goods as those of the plaintiff, there was no basis in the evidence to support the plaintiff's

charge of unfair competition. The complaint was accordingly dismissed with prejudice and judgment was entered for the defendant. 150 F.Supp. 726. This appeal followed.

The plaintiff contends on this appeal that the district court erred in concluding that there was no confusing similarity between the names Micturin and Mictine because they did not designate medicinal tablets for the alleviation or cure of the same or closely related human ailments, and in refusing on this ground to enjoin the defendant's use of the name Mictine.

There is no precise formula or rule of law which may be applied mechanically in deciding whether there is an infringement of a trade-mark or name. On the contrary, under the law of New Jersey, which the district court rightly held to be controlling here,[1] each case must be decided on its own facts and circumstances.[2] As the Supreme Court long ago pointed out in McLean v. Fleming, 1877, 96 U.S. 245, 251, 24 L.Ed. 828, "What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trademark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled." It is, however, settled that the courts will protect a trade-mark owner against poaching by a competitor who seeks to sell his goods as those of another.[3] Moreover the protection to

1. It appears that the state and federal decisions are in accord on the issues here involved. Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, 145, certiorari denied 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377. While the plaintiff argues that New Jersey law is not applicable to events occurring in other jurisdictions, it has not shown that the law of those other jurisdictions is different, with respect to the problems here presented, from the law of New Jersey or the federal law. Accordingly, that difficult problem in the conflict of laws need not be decided in this case. See

Campbell Soup Co. v. Armour & Co., 3 Cir., 1949, 175 F.2d 795, 796–797.

2. Goldscheider v. Schnitzer, 1949, 3 N.J. Super. 425, 430, 66 A.2d 457, 460; 3 Callman, Unfair Competition and Trade-Marks, 2nd ed., § 81.1; 1 Nims, Unfair Competition and Trade-Marks, 4th ed., § 221d.

3. In re Trade-Mark Cases, 1879, 100 U.S. 82, 92, 25 L.Ed. 550; Hanover Star Mill Co. v. Metcalf, 1916, 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381.

which the owner of a trade-mark or name is entitled is not solely against confusion resulting from the use by another of the same or a similar name for a competing product in the same market. For the courts have frequently enjoined the use of a trade-mark or name in related fields whether or not the products were actually similar or competitive.[4] In a suit to enjoin the use of a trade-name, as distinguished from an action for the recovery of damages or profits from its use, it may be equitable as well as in the public interest, under particular circumstances, to enjoin the defendant from using his trade-name although it is not applied to a product which is similar to that to which the plaintiff's name is applied, and even though the defendant does not seek to induce purchasers to buy his goods instead of those of the plaintiff.

In the field of medical products, it is particularly important that great care be taken to prevent any possibility of confusion in the use of trade-marks.[5] The test as to whether or not there is confusing similarity in these products even if prescribed and dispensed only by professionally trained individuals does not hinge on whether or not the medicines are designed for similar ailments. The rule enunciated by Judge Hulen in Cole Chemical Co. v. Cole Laboratories, D.C.Mo.1954, 118 F.Supp. 612, 616, 617, is applicable here:

"Plaintiff and defendant * * * are engaged in the sale of medical preparations. They are for ultimate human consumption or use. * *

They are practically all for ailments of the human body. Confusion in such products can have serious consequences for the patient. Confusion in medicines must be avoided.

* * * * * *

"Prevention of confusion and mistakes in medicines is too vital to be trifled with."

The observations made by Assistant Commissioner Leeds of the Patent Office in R. J. Strasenburgh Co. v. Kenwood Laboratories, Inc., 1955, 106 USPQ 379, 380, are particularly apt, that

"physicians are not immune from confusion or mistake. Furthermore, it is common knowledge that many prescriptions are telephoned to the pharmacist and others are handwritten, and frequently the handwriting is not unmistakably legible. These facts enhance the chances of confusion or mistake by the pharmacist in filling the prescription if the marks appear too much alike when handwritten or sound too much alike when pronounced."

The defendant concedes that physicians and pharmacists are not infallible but urges that the members of these professions are carefully trained to detect differences in the characteristics of pharmaceutical products. While this is doubtless true it does not open the door to the adoption by manufacturers of medicines of trade-marks or names which would be confusingly similar to anyone not exercising such great care. For physicians and pharmacists are human and in common with the rest of mankind

---

4. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 1917, 247 F. 407, L.R.A.1918C, 1039, certiorari denied 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 1924, 300 F. 509, certiorari denied Thompson v. Vogue Co., 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850; Rosenberg Bros. & Co. v. Elliott, 3 Cir., 1925, 7 F.2d 962; Yale Electric Corporation v. Robertson, 2 Cir., 1928, 26 F.2d 972; Kotabs v. Kotex Co., 3 Cir., 1931, 50 F.2d 810, certiorari denied 284 U.S. 665, 52 S.Ct. 41, 76 L.Ed. 563; L. E. Waterman Co. v. Gordon, 2

Cir., 1934, 72 F.2d 272; Procter & Gamble Co. v. J. L. Prescott Co., 3 Cir., 1939, 102 F.2d 773, certiorari denied 308 U.S. 557, 60 S.Ct. 80, 84 L.Ed. 468. See Restatement, Torts, §§ 717, 744.

5. See Campbell Products v. John Wyeth & Bro., 1944, 143 F.2d 977, 31 C.C.P.A., Patents, 1217; Thymo Borine Laboratory v. Winthrop Chemical Co., 1946, 155 F.2d 402, 33 C.C.P.A., Patents, 1104; Van Pelt & Brown v. John Wyeth & Bro., 1947, 161 F.2d 244, 34 C.C.P.A., Patents, 1033.

are subject to human frailties. In the field of medicinal remedies the courts may not speculate as to whether there is a probability of confusion between similar names. If there is any possibility of such confusion in the case of medicines public policy requires that the use of the confusingly similar name be enjoined.[6] Indeed, as the plaintiff points out, the district court itself in this case regarded the defendant's right to use the name Mictine as very doubtful. For in its opinion on amendment of judgment the court stated that "the defendant herein trod a very narrow course when it adopted the name Mictine with full knowledge of the prior use of the name Micturin by the plaintiff."

For the reasons which we have stated we hold that the finding of the district court, with which we concur, that there is [150 F.Supp. 732] "obvious similarity in derivation, suggestiveness, spelling, and sound in careless pronunciation, between 'Micturin' and 'Mictine' as applied to pills to be taken by mouth for therapeutic purposes" requires the conclusion, in the circumstances of this case, that the defendant has infringed the rights of the plaintiff in its common-law tradename Micturin and should be restrained from further doing so. The contention of the defendant that the plaintiff abandoned the name Micturin in 1953 is without support in the record and requires no discussion. Accordingly we conclude that the district court erred in denying the plaintiff injunctive relief.

■■■ The plaintiff further contends that the district court erred in denying it an accounting of defendant's profits from the scale of Mictine. The determination of the district court in this regard was based on its findings that there was no actual competition between Micturin and Mictine tablets and that there has been no showing of palming off by the defendant of its product as that of the plaintiff. Accordingly, the court concluded that the defendant was not guilty of unfair competition.

It does not follow that because a trademark owner is entitled to an injunction to prevent future infringement he is ipso facto entitled to an accounting of profits.[7] An accounting will be denied where an injunction will satisfy the equities of the case. Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386. Upon consideration of the facts of the present case we are clear that the district court did not err in denying an accounting and that the equities will be fully satisfied by the granting of an injunction against future use of the name Mictine by the defendant.

The judgment of the district court will be reversed and the cause will be remanded with directions to grant an injunction but to deny an accounting of profits.

6. See Lambert Pharmacal Co. v. Bolton Chemical Corporation, D.C.N.Y.1915, 219 F. 325, 326.

7. McLean v. Fleming, 1877, 96 U.S. 245, 24 L.Ed. 828; International Silver Co. v. Wm. H. Rogers Corporation, 1904, 66 N.J.Eq. 140, 57 A. 725; Rubber & Celluloid Harness T. Co. v. Rubber-Bound Brush Co., 1912, 81 N.J.Eq. 419, 88 A. 210, affirmed 81 N.J.Eq. 519, 88 A. 213; J. F. Rowley Co. v. Rowley, 3 Cir., 1912, 193 F. 390, 393; Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, 148, certiorari denied 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377. See also Restatement, Torts, § 745.